## Bleakley v. Feldman, Appellant.

*Interpleader — Ownership of automobile — Evidence — Case for jury.*

On the trial of a sheriff's interpleader to determine the ownership of an automobile, where the evidence discloses circumstances out of the ordinary, and complicated, and the controlling question is a mixed one of law and fact, the case must be resolved by a jury under proper instructions from the court.

Argued April 13, 1915.   Appeal, No. 78, April T., 1915, by defendant, from judgment of C. P. Venango Co., Jan. T., 1913, No. 11, at E. D., for plaintiff n. o. v. in case of O. D. Bleakley v. George W. Feldman.   Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ.   Reversed.

Sheriff's interpleader.   Before CRISWELL, P. J.

The facts are stated in the opinion of the Superior Court.

Error assigned was in entering judgment for plaintiff n. o. v.

*James S. Carmichael,* for appellant.

*A. R. Osmer,* with him *N. F. Osmer,* for appellee.

OPINION BY HEAD, J., November 29, 1915:

This was a feigned issue under the sheriff's interpleader act.   The real question in controversy was the ownership of a certain Thomas automobile, No. 1540, which had been taken in execution as the property of one McKeown at the suit of Feldman, the appellant.   It was claimed by Bleakley, the appellee.   The case was tried through on its merits, the questions of fact were submitted to the jury and a verdict followed for the defendant, the appellant, for the loss he had sustained by reason of the action of the claimant.   Thereafter, on consideration of a motion for judgment in favor of the plaintiff, n. o. v., the learned trial judge reached the conclusion there was no sufficient evidence to support the verdict and entered judgment accordingly.

One Dale was the selling agent of the Thomas cars in the City of Franklin where the other parties resided. He ordered the car in question from the factory.   Before it was delivered he executed a bill of sale for it to Bleakley and received from him the consideration agreed on. The car in due time was delivered to Bleakley.   He was

willing that Dale should sell the car for any sum greater than he, Bleakely, had advanced or paid, with the understanding Dale was to have such surplus. He authorized or permitted Dale to take the car to Cleveland to demonstrate it to a prospective purchaser there. Nothing came of that effort to sell. Dale then undertook to sell the car to McKeown. The latter was one of the beneficiaries of a large trust estate of which Bleakley was the active trustee. All of the income of McKeown, said to be as much as twelve thousand dollars a year, was paid to or for him by or through Bleakley. About a year previous to the transaction in question Dale had sold another car to McKeown. After agreeing on the money consideration, Dale was told to go to Bleakley who would arrange that part of it and that was done. The learned court below saw fit to exclude most of the evidence offered as to this transaction, but there is enough in the record to support what we have stated.

When Dale undertook to sell to McKeown the Thomas car, 1540, the subject of this controversy, there is evidence to show he was acting within, at least, the apparent scope of his authority, even if we assume the car was then actually and absolutely owned by Bleakley. McKeown then owned a Pennsylvania car worth, as the evidence discloses, but a few hundred dollars. They agreed that Dale would sell and McKeown would buy the Thomas car, and that in payment therefor, he would give to Dale his Pennsylvania car, and pay about two thousand dollars in cash. He at once turned over the possession of the Pennsylvania car to Dale who kept it until he sold it. That much of the consideration was certainly paid. As to the money, Dale was told again to go to Bleakley who would arrange it and this appears to have been satisfactory to him. There is evidence the Thomas car was put into the possession of McKeown as owner, and that he took one or two lengthy tours in it. When Dale went to Bleakley the latter suggested he draw a draft on McKeown and leave it with him. This

was done. That draft not only included the cash payment on the car but a further sum in which Dale was interested. It appears from the testimony of Bleakley he never presented this draft to McKeown for his acceptance or did anything else with it. Shortly afterwards he took physical possession of the Thomas car. Thus the situation remained at the time of the levy.

It thus appears to us that the circumstances from which the true ownership of the car must be deduced, are out of the ordinary, and that the controlling question in the case became a mixed one of law and fact to be resolved by the jury under proper instructions from the court.

Judgment reversed and record remitted to the court below with direction to enter judgment on the verdict.